**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| EMAD MAMDOUH FAWZI ABOUELYAMEN, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 2:26-cv-02742-TLP-cgc |
| CHRISTOPHER BULLOCK, | ) ) ) | |
| Respondent. | ) ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Emad Mamdouh Fawzi Abouelyamen petitions for a writ of habeas corpus under 28 U.S.C. § 2241.  (ECF No. 1.)  The Court ordered Respondent to show cause why the Writ should not be granted.  (ECF No. 6.)  After Respondent failed to respond, Petitioner moved for immediate release.  (ECF No. 8.)  The Court held a hearing the following day and heard from Counsel for both parties.  (ECF No. 10.)  Respondent then responded (ECF No. 12), and Petitioner replied (ECF No. 13).  For the reasons below, the Court **DENIES** the Petition and **DISMISSES** this case **WITHOUT PREJUDICE**.

**BACKGROUND**

Petitioner, an Egyptian citizen, entered the United States in May 2023 near San Luis, Arizona.  (ECF No. 12-2 at PageID 31.)  The U.S. Border Patrol then "encountered" Petitioner.  (ECF No. 12-1 at PageID 27.)  And the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Petitioner under the Immigration and Nationality Act § 212(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled."

1

(*Id.*)  DHS released Petitioner from custody after an asylum officer found that he had a credible fear of persecution or torture.  (*See* ECF No. 12-2 at PageID 32.)

On June 22, 2026, the U.S. Immigration and Customs Enforcement ("ICE") served Petitioner with an arrest warrant and re-detained him in Nashville, Tennessee.  (*Id.* at PageID 31.)  He has no known criminal history.  (*Id.* at PageID 32.)  According to Petitioner, ICE detained him after he reported to a supervised release check-in "notwithstanding his consistent compliance with all reporting and supervision requirements and his appearance at the very appointment at which he was arrested."  (ECF No. 1 at PageID 4.)  Although Petitioner was detained in the Western District of Tennessee at the time he filed the Petition, ICE transferred him to Louisiana on July 4, 2026.  (ECF No. 11.)

Petitioner alleges his detention "without any individualized determination that continued confinement is necessary to ensure his appearance at proceedings or to protect the community" is unconstitutional.  (ECF No. 1.)  He seeks "immediate release from immigration custody" or, in the alternative, "a prompt individualized custody hearing before a neutral adjudicator."  (*Id.* at PageID 9.)

**<u>ANALYSIS</u>**

On May 11, 2026, the Sixth Circuit issued its decision in *Lopez-Campos v. Raycraft*, affirming that a noncitizen who has spent "significant time . . . within the interior of the United States," and who has not committed an offense rendering them ineligible under § 1226(c), may not be detained without an individualized bond hearing.  175 F.4th 713, 734 (6th Cir. 2026).  The majority reasoned that the "text, canons, and past practice" of § 1225 and § 1226 support this conclusion.  *Id.* at 725.  "To hold otherwise would subject long-term law-abiding residents in the

United States, such as Petitioners, to the hardship of mandatory detention without due process." *Id.* at 735.

Respondent concedes that *Lopez-Campos* governs this matter. (ECF No. 12 at PageID 23.) The Court agrees. Even still, Respondent argues that the Court should deny Petitioner's habeas claim as premature because he has not requested a bond hearing with an immigration judge. (*Id.* at PageID 25.) Petitioner asks the Court to excuse administrative exhaustion. (ECF No. 13.)

Administrative exhaustion is required when mandated by Congress. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). But when, as here, no statute mandates exhaustion, whether to require exhaustion of administrative remedies lies within "sound judicial discretion." *Id.* In exercising that discretion, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146; *see Smith v. United States Sec. & Exch. Comm'n*, 171 F.4th 312, 325 (6th Cir. 2026) ("This rule is designed to afford the agency the opportunity to reconsider its position in the first instance, and to promote efficient litigation." (citation omitted)). Institutional interests are "protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145.

There are times when the interest of the individual weighs heavily against the institutional interests at stake. Examples of this occur when "unreasonable or indefinite timeframe for administrative action" creates undue prejudice; when administrative remedies are inadequate because the agency is not "empowered" to grant effective relief; or when "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146–48. A court may also waive

exhaustion when pursuing administrative remedies would be futile.  *Shearson v. Holder*, 725 F.3d 588, 594 (6th Cir. 2013) (citation omitted).

Before *Lopez-Campos*, this Court routinely held that administrative exhaustion was futile. *See, e.g.*, *Urrutia-Diaz v. Ladwig*, No. 25-3098, 2025 WL 3689158, at *3–4 (W.D. Tenn. Feb. 13, 2026).  That was because the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado* made exhausting administrative remedies a fruitless endeavor.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025) (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'").  For those petitioners to exhaust their administrative remedies, they would have needed to appeal to the same BIA that mandated their detention in the first place.

But these considerations are no longer present in a post-*Lopez-Campos* landscape.  The Sixth Circuit has now ruled—and Respondent acknowledges in most cases—that many of these petitioners are entitled to bond hearings.  And the need for a bond hearing was the entire underpinning of the Court's earlier holdings.

This is especially true considering the record here.  Petitioner has not asked for a bond hearing and instead seeks federal-court intervention before an immigration judge has had the opportunity to handle a bond request in the first place.  Habeas corpus relief is not meant to be a means to completely bypass the administrative scheme set out by Congress.  So unlike before, the Court has no reason to presume that the administrative process is inadequate or futile.  *See Smith*, 171 F.4th at 325 (discussing futility and explaining that "[t]his rule is designed to afford

the agency the opportunity to reconsider its position in the first instance, and to promote efficient litigation." (citation omitted)).

The Court acknowledges that Petitioner considers the immigration appeals process weigh against his prospects of release.  (*See* ECF No. 13 at PageID 38.)  But in effect, Petitioner asks the Court to speculate about how an immigration judge or the Board of Immigration Appeals will handle his bond determination.  The Court declines to do so given the developments noted above.  *Cf. Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669, 676 (6th Cir. 2018) ("Before delving into any constitutional quandary, we usually give the Executive a chance to confirm that the relevant statutes and regulations apply to the petitioner in the way that he claims.  Without doing so, the courts would have no idea how things would shake out."); *Smith*, 178 F.4th at 325 ("We view the crucial inquiry as whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." (citations omitted)).

Plaintiff is entitled to a bond hearing as Respondent has already conceded.  To receive that relief, Petitioner must request as much from an immigration judge in the first place.

## CONCLUSION

Because Petitioner failed to exhaust his administrative remedies, the Court **DENIES** the Petition and **DISMISSES** this case **WITHOUT PREJUDICE**.

**SO ORDERED**, this 11th day of August, 2026.

       s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE